[Cite as *In re R.H.*, 2011-Ohio-6749.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

IN RE: R.H., M.H., A.H.

C.A. Nos.   11CA010002
             11CA010003

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE Nos.   06JC15000
             06JC15001
             09JC27153

DECISION AND JOURNAL ENTRY

Dated: December 29, 2011

CARR, Judge.

**{¶1}** Appellants, Joyce H. ("Mother") and Randy H. ("Father"), appeal from a judgment of the Lorain County Court of Common Pleas, Juvenile Division, that terminated their parental rights and placed their three minor children in the permanent custody of Lorain County Children Services ("LCCS"). This Court affirms.

I.

**{¶2}** Mother and Father are the natural parents of R.H., born October 27, 2001, M.H., born August 9, 2004, and A.H., born September 7, 2008. The family's history with LCCS began before the youngest child was born. On September 11, 2006, LCCS filed complaints, alleging that R.H. and M.H. were neglected and dependent children due to unsanitary living conditions in the home and the parents' failure to adequately supervise the children or meet their basic needs. Each child was underweight and developmentally delayed and had not received regular medical

care. R.H. and M.H. were later adjudicated neglected and dependent children. They were initially placed in the emergency temporary custody of LCCS but were later returned to their parents' custody under an order of protective supervision by LCCS. The trial court terminated the order of protective supervision in July 2007.

{¶3} On August 17, 2009, LCCS again sought temporary custody of R.H. and M.H. due to neglect by their parents. LCCS alleged that, one night while Mother was at work, Father locked the two children out of the house, where they were found naked, dirty, unsupervised, and engaged in inappropriate touching. LCCS also sought temporary custody of A.H., who was later adjudicated a neglected and dependent child, and all three children were placed in the temporary custody of LCCS. Based on the findings of the magistrates who conducted the adjudicatory and dispositional hearings, the trial court concluded that LCCS had proven its allegations of dependency and neglect by clear and convincing evidence. Neither parent objected to factual findings made by any of the magistrates in this case, nor did they appeal from the adjudication and disposition of any of the children.

{¶4} When the children were removed from the home, all three had significant developmental delays, as well as behavioral problems that were not being addressed by their parents. R.H. had not been attending school regularly and had not been receiving any assistance for significant developmental delays in his motor skills and speech. At the age of eight years old, he had difficulty forming sentences and communicating and was unable to use a fork or spoon. He was also fearful, clingy, withdrawn, hyper, and easily distracted. M.H. has an IQ of 68 and was in need of additional educational services, which she had not been receiving. She also had serious behavioral problems. She had such difficulty controlling her emotions that she behaved like an "animal" when she started therapy. A.H. also suffered from developmental

delays in his speech and large motor skills when he came into LCCS custody. Still an infant at that time, his foster mother found it strange that he rarely cried, as he did not seem to understand that his needs would be met if he did. When initially placed in foster care, M.H. insisted on acting as a caregiver to A.H. and was even found sleeping on the floor outside his room to watch over him.

{¶5} The reunification goals of the case plan focused on the children receiving educational help, the older children receiving counseling, and the parents obtaining stable income and housing, parenting education, and counseling. The goal of parenting education was to improve the parents' ability to meet their children's basic and special needs. In addition, counseling was ordered to address Father's admitted drug and alcohol abuse and Mother's lack of insight into her children's needs due to her low intelligence level and mental health problems.

{¶6} Although Mother initially made progress on some of the reunification goals, Father did not. Father refused to engage in counseling or submit urine samples for testing, and would not otherwise cooperate with LCCS in working toward reunification with his children. During January 2010, because Father admittedly continued to abuse drugs and alcohol and had been hostile and aggressive with LCCS workers and his children, the trial court terminated his visitations with the children.

{¶7} LCCS initially moved for permanent custody of all three children on April 2, 2010. The trial court held a hearing on the motion, at which it heard evidence about the extreme ongoing neglect that these children had experienced in their parents' home and the resulting emotional harm, behavioral problems, and developmental delays that they had suffered. Both parents seemed to lack insight into their children's needs, but Mother had been cooperating with LCCS and service providers to work toward reunification with her children. Following the

hearing, the trial court found that Mother was making progress on the reunification goals of the case plan, that there was reasonable cause to believe that she could be reunited with the children within a reasonable time, and, therefore, that it was in the children's best interests to allow Mother expanded visitation and more time to work on the case plan. Consequently, the trial court denied the motion for permanent custody and extended temporary custody for another six months.

{¶8} During the extension of temporary custody, the children had no contact with Father but their visitation with Mother was expanded. Mother was permitted to have several off-site visits with the children, during which the level of agency supervision was decreased from "supervised" to "monitored." During December 2010, however, after Father appeared during one of the visits in violation of the court's prior order, LCCS filed an amended case plan that suspended Mother's visits with the children. The actual reason that Mother's visits were suspended is not clear from the record, however. Although this issue was litigated at a hearing on Mother's objection to the case plan amendment, after which the trial court overruled her objection, a transcript of that hearing was not made part of the record on appeal.

{¶9} On November 17, 2010, LCCS again moved for permanent custody of R.H., M.H., and A.H. Mother later moved for legal custody of the children. Following a hearing on both motions, the trial court found that the children had been in the temporary custody of LCCS for more than 12 of the prior 22 months, that they could not be returned to either parent within a reasonable time or should not be returned to their custody, and that permanent custody was in their best interests.

{¶10} Mother and Father separately appealed and this Court later consolidated their appeals. Because Mother and Father have raised different arguments on appeal, their three assignments of error will be addressed individually.

II.

**MOTHER'S ASSIGNMENT OF ERROR**

"THE TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN APPLYING THE CRITERIA OF O.R.C. 2151.414[.]"

{¶11} Mother's sole assignment of error is that the evidence in the record fails to support the trial court's finding under R.C. 2151.414(E) that the children could not be returned to their parents within a reasonable time or should not be returned to their custody.

{¶12} Before a juvenile court can terminate parental rights and award to a proper moving agency permanent custody of a child, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of the prior 22 months, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D).  See R.C. 2151.414(B)(1)-(2); see, also, *In re William S.* (1996), 75 Ohio St.3d 95, 99.

{¶13} The trial court found that the first prong of the permanent custody test was satisfied for two reasons: (1) the children could not be placed with either parent within a reasonable time or should not be placed with them, and (2) they had been in the temporary custody of LCCS for more than 12 of the prior 22 months.  See R.C. 2151.414(B)(1)(a) and (d); R.C. 2151.4141(E).  Mother does not take issue with the trial court's "12 of 22" finding, but

challenges only its alternate finding that the children could not or should not be returned to their parents' custody due to factors set forth in R.C. 2151.414(E). Any error in the trial court's alternate findings under R.C. 2151.414(E) would not constitute reversible error, however.

{¶14} To demonstrate reversible error, Mother must demonstrate trial court error as well as prejudice resulting from that error. *Lowry v. Lowry* (1988), 48 Ohio App.3d 184, 190, citing *Gries Sports Ents., Inc. v. Cleveland Browns Football Co., Inc.* (1986), 26 Ohio St.3d 15, 28. "A prejudicial error is defined as one which affects or presumptively affects the final results of the trial." *Miller v. Miller*, 5th Dist. No. 06CA3, 2006-Ohio-7019, at ¶12. Because Mother has not disputed that the trial court's "12 of 22" finding under R.C. 2151.414(B)(1)(d) was supported by the evidence, which satisfied the first prong of the permanent custody test, she cannot demonstrate reversible error. Mother's sole assignment of error is overruled.

## FATHER'S ASSIGNMENT OF ERROR I

"THE TRIAL COURT'S FAILURE TO ADDRESS EACH OF THE BEST INTEREST FACTORS OF [R.C.] 2151.414(D)(1) AND TO MAKE FINDINGS BASED UPON THE EVIDENCE PRESENTED AT THE PERMANENT CUSTODY HEARING RENDERS ITS AWARD OF PERMANENT CUSTODY TO LCCS CONTRARY TO LAW AND THIS COURT SHOULD, THEREFORE, REVERSE THE JUDGMENT BELOW."

{¶15} Through his first assignment of error, Father argues that although the trial court made a finding that permanent custody was in the children's best interests, it erred by failing to articulate its findings on each of the best interest factors set forth in R.C. 2151.414(D)(1). Although this Court has held that the trial court must make a best interest finding based on the mandatory factors set forth in R.C. 2151.414(D), it has only noted in dicta that the trial court "should" also detail its findings on each best interest factor, as such reasoning would aid this Court's ability to conduct a meaningful appellate review. See, e.g., *In re M.B.*, 9th Dist. No. 21760, 2004-Ohio-597.

{¶16} Likewise, the cases that Father cites from other appellate districts do not support his argument that the trial court must make explicit findings on each of the best interest factors. He cites several cases from the Third Appellate District, which has also noted that the "preferred practice" would be for the trial court to articulate its findings on each prong, but it has not held that the trial court must do so, as long as it affirmatively indicates that it has considered each of the statutory best interest factors. See, e.g., *In re McMillen*, 171 Ohio App.3d 686, 2007-Ohio-2046, at ¶12, citing *In re D.H.*, 3d Dist. No. 9-06-57, 2007-Ohio-1762; *In re Cravens*, 3d Dist. No. 4-03-48, 2004-Ohio-2356. The Eleventh District has similarly held that "[t]here must be some indication on the record that the trial court considered all four factors found in R.C. 2151.4141(D)." *In re Jacobs* (Aug. 25, 2000), 11th Dist. No. 99-G-2231.

{¶17} In the trial court's judgment entry, it explicitly stated that it had "considered all relevant factors, including, but not limited to, those factors enumerated in R.C. 2151.414(D)[.]" Although Father suggests that this Court reversed another Lorain County permanent custody decision because "the trial court's summary statement that it considered all of the factors enumerated in [R.C. 2151.4141(D)]" was insufficient to support its award of permanent custody, this Court's decision in that case was not based on the trial court's failure to articulate findings on each best interest factor. See *In re A.W.*, 9th Dist No. 09CA009631, 2010-Ohio-817. Rather, the reversal of the judgment in *In re A.W.* was based on the lack of evidence in the record to support the best interest finding. Id. at ¶25.

{¶18} In this case, although the better practice would have been for the trial court to more fully articulate its reasoning for its ultimate best interest finding, Father has failed to demonstrate that the trial court committed reversible error by failing to do so.

{¶19} Father also argues that the trial court erred by accepting the proposed findings of fact and conclusions of law submitted by LCCS because 26 of those factual findings were not supported by evidence presented at the permanent custody hearing. Although this Court has held that the trial court cannot base its permanent custody findings on evidence outside the trial court record, it has never held that every fact set forth in the trial court's permanent custody decision must be based on evidence presented at the permanent custody hearing. See *In re J.C.*, 9th Dist. No. 25006, 2010-Ohio-637, at ¶14.

{¶20} By the time of the permanent custody hearing, the record in this case dated back to 2006, with prior adjudicatory and dispositional hearings and even a prior permanent custody hearing. After the prior adjudicatory hearings, factual findings were made by the magistrates, which were adopted by the trial court without any objections to those findings filed by either parent. See Juv.R. 40(D)(3)(b)(iv). At the most recent permanent custody hearing, LCCS admitted many of those prior orders into evidence, including the unchallenged findings of fact, also without any objection from either parent.

{¶21} Moreover, most of the findings that Father challenges had no direct bearing on the trial court's "12 of 22" finding or its finding that permanent custody was in the best interests of the children, as the challenged findings primarily involve background facts about the reasons the children were removed from the home and adjudicated neglected and dependent children. R.C. 2151.414(A)(1) explicitly provides that the trial court should not re-litigate its prior adjudicatory or dispositional orders at the permanent custody hearing. Also, despite Father's argument to the contrary, several of these findings were supported by testimony presented at the most recent permanent custody hearing.

{¶22} Although Father does not challenge the trial court's ultimate finding that permanent custody was in the best interest of all three children, our review of the record reveals that it was supported by clear and convincing evidence presented at the most recent permanent custody hearing. When determining whether a grant of permanent custody is in the children's best interests, the juvenile court must consider the following factors:

"(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

"(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

"(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period ***;

"(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]" R.C. 2151.414(D)(1)(a)-(d).[1]

{¶23} Although Father's interaction with his children at the beginning of this case was limited to supervised visitation, his visitation was terminated during January 2010, because he was hostile and aggressive with LCCS and his children and refused to work on the reunification goals of the case plan. At the time of the permanent custody hearing, he had not seen any of his children for more than a year.

{¶24} The case plan required, among other things, that Father address his drug and alcohol abuse problems and that he demonstrate an ability to address his children's special needs. Father refused to admit that he had parenting problems, however, and denied that his children had special needs. He refused to engage in counseling and, although he started a drug and

---

[1] The factor set forth in R.C. 2151.414(D)(1)(e) will not be addressed because LCCS presented no evidence to establish any of the factors set forth in R.C. 2151.414(E)(7) through (11).

alcohol assessment, the counselor terminated the interview because Father became hostile, agitated, and used vulgar language. Father never followed through with completing an assessment or otherwise addressing his substance abuse problem. He told the caseworker that it was none of the agency's business if he chose to get high. Father often became belligerent with the caseworker and other service providers and became so hostile during one meeting with the counselor who taught the parenting class that the counselor felt the need to call 911 to protect himself.

{¶25} The children's interaction with their foster families, with their counselors, and with each other, on the other hand, had become more positive and the bond had grown throughout this case. M.H. and A.H. were placed together in the same foster home, while R.H. was placed in a separate home, because he had sexually acted out against M.H. The children had become closely attached to their respective foster families, who had made efforts for all three children to have regular, supervised visits together, however, and they intended to continue doing so. Both sets of foster parents were interested in adopting the children.

{¶26} The children's counselors, M.H.'s teacher, and A.H.'s intervention specialist further described some of the help that each child had been receiving to work on their behavioral problems and developmental delays. Each child had made significant progress toward resolving those difficulties. The foster parents were providing the children appropriate boundaries and consistent structure, the type of environment that was essential to their healthy development, given their developmental delays and behavioral problems. Both R.H. and M.H. had become involved in activities and were making friends and doing better academically.

{¶27} R.H. and M.H. had each expressed their desire to remain in their respective foster homes. The caseworker testified that R.H. "begged me to do everything I can so that he doesn't

have to go back to his parents." R.H. had expressed to his counselor that he was afraid of both his parents and wanted to stay with his foster parents. M.H. told the caseworker that she wanted to live with her foster family "forever."

{¶28} A.H. was only two years old at the time of the hearing, so the guardian ad litem spoke on his behalf. She gave her opinion that permanent custody was in the best interest A.H. and the other two children. She emphasized that the parents had not improved their relationship with their children or their parenting skills. The children, on the other hand, were very bonded with their respective foster families and were doing well in those stable and nurturing environments. The guardian testified that the children were finally getting the attention that they needed and the foster parents were very involved in their lives and were meeting all of their special needs.

{¶29} Until August 2009, the children had lived with Mother and Father, who had not met many of their basic needs and had failed to acknowledge or address their special needs. Even at the time of the permanent custody hearing, Mother continued to deny that her children had behavioral problems or developmental delays at the time they were removed from her care. During the twenty months that the children had lived outside their parents' custody, however, they had made significant strides toward achieving normal lives. Each was living in a structured, stable, and loving environment and was doing much better developmentally, academically, and socially.

{¶30} The children were in need of a legally secure permanent placement and the evidence supported a reasonable conclusion that such a secure placement could only be achieved through a grant of permanent custody to LCCS. Neither parent was in a position to provide the children with a suitable home and there were no relatives who were willing or able to do so. As

Father has failed to demonstrate any error in the trial court's best interest finding, his first assignment of error is overruled.

## FATHER'S ASSIGNMENT OF ERROR II

"THE TRIAL COURT COMMITTED REVERSIBLE ERR[OR] BY AWARDING PERMANENT CUSTODY TO LCCS WITHOUT FIRST APPOINTING COUNSEL TO REPRESENT THE INTERESTS OF THE CHILDREN AND THIS COURT SHOULD, THEREFORE, REVERSE THE TRIAL COURT'S AWARD OF PERMANENT CUSTODY TO LCCS."

**{¶31}** Father next argues that the trial court erred by failing to appoint independent counsel for the children. None of the parties raised this issue at any time in the trial court, but Father raises it for the first time on appeal to this Court. Although Father cites authority from other appellate districts for his assertion that this issue need not be timely raised in the trial court to preserve it for appellate review, that is not the law in this district.

**{¶32}** As this Court has repeatedly stated, "'where no request was made in the trial court for counsel to be appointed for the children, the issue will not be addressed for the first time on appeal.'" *In re T.E.*, 9th Dist. No. 22835, 2006-Ohio-254, ¶7, quoting *In re K.H.*, 9th Dist. No. 22765, 2005-Ohio-6323, at ¶41, citing *In re B.B.*, 9th Dist. No. 21447, 2003-Ohio-3314, at ¶7. Other appellate districts have also held that this issue must be raised in the trial court to preserve it for appellate review. See, e.g., *In re Graham*, 4th Dist. No. 01CA57, 2002-Ohio-4411, at ¶31-33; *In re Brittany T.* (Dec. 21, 2001), 6th Dist. No. L-01-1369.

**{¶33}** Father has not asserted that the trial court committed plain error, nor has he explained why this Court should delve into this issue for the first time on appeal. In *In re T.E.*, this Court explained its rationale for not addressing this issue when a parent raised it for the first time on appeal:

"Although some courts have held that a parent cannot waive the issue of the children's right to counsel because such a result would unfairly deny the children

their right to due process, see, e.g., *In re Moore*, 158 Ohio App.3d 679, 2004-Ohio-4544, at ¶31, we disagree that the reasoning applies to this case. Mother has not appealed on behalf of her children and is not asserting their rights on appeal. This is Mother's appeal of the termination of her own parental rights and she has standing to raise the issue of her children's right to counsel only insofar as it impacts her own parental rights. See *In re Smith* (1991), 77 Ohio App.3d 1, 13.

"The Ohio General Assembly and the Ohio Supreme Court have required courts to expedite cases involving the termination of parental rights, to prevent children from lingering in foster care for a number of years. See, e.g., R.C. Chapter 2151; App.R. 11.2. Mother should not be permitted to impose an additional delay in the proceedings by raising a belated challenge for the first time on appeal, under the auspices of defending her children's due process rights. She had the opportunity at the permanent custody hearing to timely assert their rights, and therefore her derivative rights, but she chose not to. This Court is not inclined to reward a parent for sitting idly on her rights by addressing an alleged error that should have been raised, and potentially rectified, in the trial court in a much more timely fashion." *In re T.E.*, at ¶8-9.

{¶34} Also, there was no indication in this case of any conflict between the children's wishes and the recommendation of the guardian ad litem. The youngest child was too young to express his wishes and presumably too young to work with appointed counsel. The older two children had expressed their desire to remain in their foster homes, which was entirely consistent with the recommendation of the guardian ad litem. Thus, there is no indication that counsel representing the guardian ad litem was not properly advocating on behalf of the children. Consequently, Father's second assignment of error is overruled.

III.

{¶35} The assignments of error of Mother and Father are overruled. The judgment of the Lorain County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

---

DONNA J. CARR
FOR THE COURT

BELFANCE, P. J.
DICKINSON, J.
CONCUR


APPEARANCES:

BARBARA A. WEBBER, Attorney at Law, for Appellant.

MATTHEW A. CRAIG, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and NICK J. HANEK, Assistant Prosecuting Attorney, for Appellee.