**[Cite as *In re A.T.*, 2026-Ohio-611.]**

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

IN RE: Au. T.
    Ac. T.
    L.T.

C.A. Nos.    25AP0029
                25AP0030
                25AP0031
                25AP0033
                25AP0034
                25AP0035


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE Nos.   2023 JUV-C 000583
              2023 JUV-C 000584
              2023 JUV-C 000585

DECISION AND JOURNAL ENTRY

Dated: February 23, 2026

---

CARR, Presiding Judge.

{¶1}    Appellants, L.H. ("Mother") and A.T. ("Father"), appeal from a judgment of the Wayne County Court of Common Pleas, Juvenile Division, that terminated their parental rights to their three minor children and placed them in the permanent custody of Wayne County Children Services Board ("CSB"). This Court affirms.

I.

{¶2}    Mother and Father are the biological parents of twins with the initials A.T., born December 12, 2012; and L.T., born August 19, 2014. Mother has several other children who were also involved in the consolidated trial court proceedings but are not parties to this appeal.

{¶3} On June 23, 2023, CSB filed complaints to allege that Mother's seven children were neglected and dependent and that the youngest child was also abused because the children had been exposed to domestic violence perpetrated against Mother by the father of her then youngest child; ongoing drug use by Mother, which had caused the youngest child to test positive for amphetamines at birth; and that Mother had left them for an extended period in the care of a convicted drug trafficker. After these children were removed from the home, they tested positive for methamphetamine through 180-day hair follicle testing.

{¶4} Mother and Father later stipulated that the children were dependent, CSB dismissed the allegations of neglect, and the trial court adjudicated them dependent. The court later placed the children in the temporary custody of CSB and adopted the case plan as an order of the court. Because the original case plan included no specific requirements for Father, the trial court further ordered Father to obtain a substance abuse assessment, follow any treatment recommendations, and regularly submit to random drug screening.

{¶5} The case plan required Mother to obtain a substance abuse assessment and a separate psychological assessment, engage in any recommended treatment, submit to regular drug testing, and demonstrate that she could provide for the basic needs of the children in a safe and stable home. However, Mother informed the trial court at the dispositional hearing that she did not want to engage in case plan services, visit the children, or be reunified with them.

{¶6} During December 2023, both parents appeared with their respective trial counsel for a review hearing. At that time, neither parent had visited the children since they were removed from Mother's home almost six months earlier. Father had obtained a substance abuse assessment, but he had refused to engage in counseling or drug screening. Mother had not engaged in any case plan services.

{¶7} On April 29, 2024, CSB moved for permanent custody of A.T., A.T., and L.T. Following a hearing held during August and September 2024, the trial court found that CSB had established the first prong of the permanent custody test because both parents had abandoned the children. *See* R.C. 2151.414(B)(1)(b). Specifically, Mother had no contact with the children during the first ten months of the case and Father had failed to have contact with them for six months after they were removed from the home.

{¶8} The trial court denied the motion for permanent custody, however, because it found that it was not in the best interest of the children. Because Father had obtained suitable income and housing and had started visiting the children, the trial court extended temporary custody for another six months so Father would have more time to engage in drug treatment and demonstrate sobriety.

{¶9} During the extension period, Father did not consistently engage in the recommended drug treatment because he insisted that he did not need it. Father also stopped submitting samples for drug screening. Mother began visiting the children, but she missed more visits than she attended. She still did not engage in case plan services.

{¶10} On December 20, 2024, CSB again moved for permanent custody of A.T., A.T., and L.T., alleging that the children had been in its permanent custody for more than 12 of the past 22 months and that permanent custody was in their best interest. Each parent alternatively requested legal custody of the children.

{¶11} Mother appeared at the final hearing with her trial counsel. Father was represented by counsel but did not attend the final hearing. Father's trial counsel did not know where Father was or why he did not attend the hearing. At the time, Father had been out of contact with CSB and the guardian ad litem for several months. Following the hearing, the trial court terminated

parental rights and placed A.T., A.T., and L.T. in the permanent custody of CSB. Mother and Father appeal and each raise one assignment of error, which this Court will address together because they are closely related.

II.

**MOTHER'S ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO [CSB] WITHOUT CLEAR AND CONVINCING EVIDENCE OF ABANDONMENT, AS REQUIRED BY LAW. THE RECORD SHOWS PARENTS MADE EFFORTS TO MAINTAIN CONTACT, INCLUDING PHONE CALLS AND VISITS. THE COURT ALSO FAILED TO PROPERLY ANALYZE THE CHILDREN'S BEST INTERESTS AS MANDATED BY STATUTE AND PRECEDENT.

**FATHER'S ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY TERMINATING FATHER'S PARENTAL RIGHTS AND GRANTING PERMANENT CUSTODY OF THE CHILDREN TO [CSB].

{¶12} The parents assert that the trial court's permanent custody judgment was not supported by the evidence presented at the final hearing. In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21.

{¶13} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs

of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996).

{¶14} The trial court found that the first prong of the permanent custody test was satisfied because the children had been in the temporary custody of CSB for at least 12 months of a consecutive 22-month period. R.C. 2151.414(B)(1)(d). Neither parent disputes that finding, which is supported by the record. At the time CSB moved for permanent custody, the children had been in its temporary custody for more than 16 months of a consecutive 22-month period.

{¶15} Mother incorrectly asserts that the trial court based its first prong finding on the parents' abandonment of the children under R.C. 2151.414(B)(1)(b). CSB did not allege, and the trial court did not find, that the parents had abandoned the children as a basis for the first prong of the permanent custody test. Instead, the trial court considered the parent's abandonment of the children as a best interest factor that it was required to consider under R.C. 2151.414(D)(1)(e) and R.C. 2151.414(E)(10). Therefore, this Court will address the trial court's abandonment finding in our review the trial court's best interest determination.

{¶16} Both parents challenge the trial court's finding that permanent custody was in the best interest of the children. When reviewing the trial court's best interest determination, this Court focuses on the specific factors set forth in R.C. 2151.414(D). *In re M.S.*, 2023-Ohio-1558, ¶ 25 (9th Dist.). The trial court was required to consider the statutory best interest factors, which

include: the interaction and interrelationships of the children, their wishes, their custodial history, their need for permanence and whether that can be achieved without a grant of permanent custody, and whether any of the factors outlined in R.C. 2151.414(E)(7)-(11) apply. R.C. 2151.414(D)(1)(a)-(e); *see also In re R.G.*, 2009-Ohio-6284, ¶ 11 (9th Dist.). The trial court found that R.C. 2151.414(E)(10) applies in this case because both parents had abandoned the children.

{¶17} Mother asserts that the trial court did not adequately weigh the best interest factors because it did not articulate a "thorough, individualized [] analysis" of each factor. R.C. 2151.414(D) does not require the trial court to set forth a written analysis of each best interest factor, however. The trial court is required to "consider" each of the factors set forth in R.C. 2151.414(D), but it need not explicitly discuss or make written findings on each factor. *In re A.M.*, 2020-Ohio-5102, ¶ 31. Similarly, although this appellate court has held that the trial court must make an overall best interest finding, "it has only noted in dicta that the trial court 'should' also detail its findings on each best interest factor, as such reasoning would aid this Court's ability to conduct a meaningful appellate review." *In re R.H.*, 2011-Ohio-6749, ¶ 15 (9th Dist.), citing *In re M.B.*, 2004-Ohio-597 (9th Dist.); *see also In re A.M.* at ¶ 32-33. It is apparent from the trial court's judgment that it fully considered each of the best interest factors and that the evidence pertaining to those factors supported its best interest determination.

{¶18} The first best interest factor is the interaction and interrelationships between the children and their parents, siblings, and other significant people in their lives. Father and Mother both emphasize on appeal that the children were bonded with each parent and had a positive relationship with them. Witnesses agreed that, when the parents visited the children, their interaction was usually appropriate and positive. Their visits never expanded beyond supervised visits because they failed to comply with the case plan. Moreover, the parents missed far more

scheduled visits than they attended. Father visited more often than Mother, but he stopped attending visits more than four months before the final hearing.

{¶19} Mother asserts in her brief that CSB "hindered the efforts of [the] parents to maintain contact with their children[,]" but the record fails to support her argument. During the first 10 months of this case, Mother did not visit the children at all, and Father visited them only sporadically during the second half of that period. Neither parent offered any evidence that CSB had prevented or hindered their efforts to visit. In fact, Mother had admitted earlier in this case that she failed to visit the children for the first ten months because she was angry that CSB had taken her children and did want to comply with the agency's visitation policy.

{¶20} After Mother began visiting the children in May 2024, she attended less than 25 percent of her scheduled visits. Mother offered no reasonable explanation for missing most of her scheduled visits. On appeal, she faults CSB for opposing her requests for video or phone contact with the children, but the agency explained that it wanted Mother to consistently visit the children in person. Moreover, these children also visited with their younger siblings at some of the visits and the younger siblings were too young for remote visits.

{¶21} According to the guardian ad litem, Mother often missed visits for extended periods without reasonable excuses. The report of the guardian ad litem includes numerous notations about Mother missing scheduled visits. On several occasions, Mother confirmed the day before a scheduled visit that she was planning to attend but later cancelled the visit at the last minute or simply did not show up. The report further indicates that Mother missed scheduled visits with the children for an entire three-month period during the second year of this case, which the guardian ad litem found to be very concerning. He noted that the parents' failure to consistently visit made

the children "sad" and was emotionally unsettling for them. The children had been addressing their feelings with counselors at school.

{¶22} In their respective foster placements, on the other hand, all three children were doing well in safe and stable homes. A.T. and A.T. had been placed together in the same foster home throughout this case and had become bonded to the entire family. L.T. had lived in a different foster home for more than one year, with three of Mother's other children. The guardian ad litem observed that the children seemed happy and comfortable in their respective foster homes. The foster parents were interested in pursuing adoption. They had been facilitating frequent visits between the siblings and would continue to do so.

{¶23} The twins were 12 years old at the time of the hearing and L.T. was 10, but they had not expressed a clear desire about where they wanted to live. The guardian ad litem filed a written report and testified on behalf of the children at the hearing. He testified that, although the children did appear to be bonded with their parents and their respective foster parents, they had not expressed a desire about where they wanted to live. His report indicated that the children had consistently avoided any discussion about their wishes, suggesting that they were uncomfortable addressing the topic. The guardian ad litem opined that permanent custody was in the best interest of the children because neither parent had seriously engaged in any case plan services or regularly visited the children.

{¶24} By the time of the final hearing, the children had spent nearly two years in the temporary custody of CSB and needed a legally secure permanent placement. The parents had not made efforts to work toward reunification and CSB had been unable to find any appropriate friends or relatives who were willing to take custody. The trial court reasonably concluded that a legally

secure permanent placement would be achieved by granting permanent custody to CSB so the children could be placed for adoption.

{¶25} The trial court also considered that the factor set forth in R.C. 2151.414(E)(10) applied to this case because both parents abandoned the children during the first year of this case. *See* R.C. 2151.414(D)(1)(e). "For the purposes of [R.C. Chapter 2151], a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days." R.C. 2151.011(C). The trial court focused primarily on the first year of this case, when neither parent had any contact with the children for the first six months of this case. In her appellate brief, Mother attempts to justify why she had limited contact with the children during the second year of this case, but she does not explain why she had no contact with them for the first ten months of this case.

{¶26} Finally, the parents emphasize the relevance of their case plan compliance. Father asserts in his brief that he was "committed to the case plan" while Mother emphasizes that both parents had made "ongoing parental efforts" to "fulfill case plan requirements[.]" This Court has repeatedly stressed that case plan compliance is not dispositive of a child's best interest. *See, e.g.*, *In re A.M.*, 2025-Ohio-5029, ¶ 22 (9th Dist.); *In re T.R.*, 2024-Ohio-3092, ¶ 24 (9th Dist.); *In re J.W.*, 2019-Ohio-210, ¶ 15 (9th Dist.). More significantly, the record does not support the parents' assertions that they had made serious efforts to reunify with the children. As explained already, they did not visit regularly and had not engaged in case plan services for most of this case. Mother began some counseling one month before the final hearing, but she still had not obtained the required psychological assessment that should have preceded that counseling.

{¶27} Neither parent testified at the hearing to defend against CSB's motion and Father did not even appear. The overwhelming evidence presented by CSB supported the trial court's conclusion that permanent custody was in the best interest of A.T., A.T., and L.T. The parents' assignments of error are overruled.

III.

{¶28} The parents' assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

DONNA J. CARR
FOR THE COURT

FLAGG LANZINGER, J.
STEVENSON, J.
CONCUR.


APPEARANCES:

ERIC D. HALL, Attorney at Law, for Appellant.

YU KIM-REYNOLDS, Attorney at Law, for Appellant.

ANGELA POTH-WYPASEK, Prosecuting Attorney, and ALEXANDER MONTVILAS, Assistant Prosecuting Attorney, for Appellee.