[Cite as *In re A.S.*, 2014-Ohio-2458.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | | |

| | | |
|---|---|---|
| IN RE A.S. | | C.A. Nos.    14CA010532 |
| | | 14CA010534 |

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    07JC16614

DECISION AND JOURNAL ENTRY

Dated: June 9, 2014

BELFANCE, Presiding Judge.

{¶1}    Appellants, Rachel W. ("Mother) and Robert S. ("Father"), appeal from a judgment of the Lorain County Court of Common Pleas, Juvenile Division, that terminated their parental rights and placed their minor child in the permanent custody of Lorain County Children Services ("LCCS").  For the reasons that follow, this Court affirms.

I.

{¶2}    Mother and Father are the natural parents of A.S., born September 5, 2006.  The parents have an older child together who was removed from their custody shortly after his birth in 2004.  However, that child is not a party to this appeal.  Mother had used cocaine during her pregnancy with A.S.'s older sibling, who was born four weeks premature and tested positive for cocaine.  In addition to concerns about Mother's drug use, the older child's juvenile case focused on drug use by Father, domestic violence between the parents, and their lack of stable housing.

The parents made little progress on the reunification goals of the case plan, and the sibling was ultimately placed in the legal custody of a maternal cousin.

{¶3} Shortly after the birth of A.S., LCCS filed a dependency and neglect complaint that alleged parenting problems similar to those in the case of the older sibling. Although A.S. did not test positive for drugs at the time of his premature birth, Mother admitted that she had used cocaine during most of the pregnancy. The agency's initial concerns in this case were that Mother continued to abuse drugs and alcohol, lacked stable housing, and was not able to meet the basic needs of A.S. At that time, Father was not living with Mother and his whereabouts were unknown. A.S. was adjudicated a neglected and dependent child and was allowed to stay with Mother under an order of protective supervision by LCCS. Mother was enrolled in a residential substance abuse treatment program at that time, where she could reside with A.S. and receive supportive services from the facility's staff. In addition, she had agreed to cooperate with LCCS and the treatment facility personnel. The order of protective supervision was terminated during May 2007 upon motion by LCCS because the agency believed that Mother had completed a substance abuse treatment program and was remaining sober through compliance with an aftercare program and the Alcoholics Anonymous 12-step program. The agency further believed that Mother was meeting the basic needs of A.S.

{¶4} During May 2012, LCCS became involved with the family again after receiving referrals that Mother had started using cocaine again. Mother initially cooperated with LCCS on a voluntary basis. On August 12, 2012, however, LCCS filed a motion to remove A.S. from Mother's legal custody, alleging that a change had occurred in the circumstances of A.S. and Mother, and that his best interest required that he be placed in the temporary custody of LCCS. *See* R.C. 2151.42(B). Specifically, although Mother had enrolled in a residential drug treatment

program, she had left A.S. in the care of Father, who was not providing for the child's basic needs. Moreover, LCCS had learned that A.S., then six years old, had numerous medical and dental problems and developmental delays that had not been appropriately addressed by his parents.

{¶5} The trial court found that a termination or modification of the legal custody order was warranted under the terms of R.C. 2151.42(B) and ordered that A.S. be placed in the temporary custody of LCCS. The case plan focused on Mother and Father addressing their substance abuse and mental health issues, obtaining the education and skills that they needed to provide for the basic and special needs of A.S., and demonstrating that they could provide him with a safe and stable home and consistently meet all of his needs.

{¶6} Over the course of the next several months, however, neither parent made sufficient progress on any of the goals of the case plan. Father did not maintain contact with LCCS or the juvenile court for a period of several months during the case. Mother started several drug treatment programs but repeatedly dropped out and began using drugs again. Although Mother attended most scheduled visits with A.S., Father did not. Moreover, neither parent completed parenting classes or attended any of the appointments with A.S.'s doctors or therapists that would have taught them how to appropriately care for their child.

{¶7} On July 9, 2013, LCCS moved for permanent custody of A.S. Mother filed an alternate dispositional motion for legal custody. Father later informed the court that he supported Mother's request for legal custody. Following an evidentiary hearing on the alternate dispositional motions on October 7 and 8, 2013, the trial court found that A.S. could not be placed with either parent within a reasonable time or should not be placed with them and that

permanent custody was in his best interest. *See* R.C. 2151.414(B)(1). Consequently, it terminated parental rights and placed A.S. in the permanent custody of LCCS.

{¶8}   Mother and Father separately appealed, and this Court later consolidated their appeals for review. Mother's two assignments of error and Father's four assignments of error will be combined and rearranged for ease of discussion.

II.

MOTHER'S ASSIGNMENT OF ERROR I

THE JUDGMENT ENTRY IN THIS MATTER IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE TO AWARD PERMANENT CUSTODY OF THE CHILD TO [LCCS.]

FATHER'S ASSIGNMENT OF ERROR I

THE TRIAL COURT ABUSED ITS DISCRETION IN DETERMINING THAT MOTHER AND FATHER HAD NOT MET THE MINOR CHILD'S MEDICAL AND DENTAL NEEDS BASED UPON THE TESTIMONY OF WITNESSES WHO HAD NO MEDICAL EXPERTISE OR BACKGROUND.

FATHER'S ASSIGNMENT OF ERROR II

THE TRIAL COURT'S FINDING THAT THE MINOR CHILD COULD NOT OR SHOULD NOT BE PLACED WITH MOTHER OR FATHER WITHIN A REASONABLE PERIOD OF TIME WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

FATHER'S ASSIGNMENT OF ERROR IV

THE TRIAL COURT'S JUDGMENT THAT PERMANENT CUSTODY TO THE AGENCY WAS IN THE CHILD'S BEST INTERESTS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶9}   We will address these assigned errors together because each pertains to the weight and/or propriety of the evidence supporting the trial court's permanent custody decision. Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary

custody of the agency for at least 12 months of a consecutive 22-month period, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). *See* R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶10} The trial court found that the first prong of the permanent custody test had been satisfied because A.S. could not be returned to either parent within a reasonable time or should not be returned to them based on its factual findings under R.C. 2151.414(E)(1), (E)(4), (E)(8), and (E)(14). Through these four assignments of error, the parents have challenged the trial court's findings on each of the alternate (E) factors.

{¶11} To demonstrate reversible error, however, Mother and Father must demonstrate not only that the trial court committed error but also that the error negatively affected the outcome of the case. *Lowry v. Lowry*, 48 Ohio App.3d 184, 190 (4th Dist.1988), citing *Gries Sports Ents., Inc. v. Cleveland Browns Football Co., Inc.*, 26 Ohio St.3d 15, 28 (1986). Because the trial court is required to find only one statutory ground to support the first prong of the permanent custody test, this Court has repeatedly emphasized that any error in its alternate findings is not prejudicial as long as one of the trial court's stated grounds is proper. *See, e.g.*, *In re R.H.*, 9th Dist. Lorain Nos. 11CA010002 and 11CA010003, 2011-Ohio-6749, ¶ 14.

{¶12} Consequently, as we have reviewed the record and determined that the evidence fully supported the trial court's first finding under R.C. 2151.414(E), we will limit our written review to that factor. Consequently, this Court will not address Father's first assignment of error to the extent that it pertains to the trial court's alternate finding under R.C. 2151.414(E)(8) that

the parents repeatedly withheld medical treatment for A.S. To the extent the parents' other assignments of error also raise challenges to the trial court's alternate findings under R.C. 2151.414(E)(4), (E)(8), and (E)(14), they will not be addressed.

{¶13} R.C. 2151.414(E)(1) required the trial court to conclude that A.S. "cannot be placed with either parent within a reasonable time or should not be placed with either parent" if it found clear and convincing evidence that "the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home." The reason LCCS initially became involved with this family was Mother's admitted cocaine abuse during her pregnancy with A.S., a problem that had also led to the removal of an older sibling from the parents' custody. In addition to the agency's concerns about the substance abuse and mental health problems of both parents, A.S. was removed from the home because Mother was living in a residential treatment facility and had left A.S. in the care of Father, who was not meeting the child's basic and special needs.

{¶14} After receiving referrals about the well-being of A.S., the caseworker went to the home to find Father sleeping on the couch and A.S. tending to his own needs. A.S. had been eating junk food, which was scattered all over the room. Although it is not clear from the record when LCCS learned about the developmental delays and medical problems of A.S., the caseworker apparently knew at that time that A.S. was not toilet trained at the age of six. When A.S. came to the door to let her into the home, however, the caseworker observed that he had feces going up his back and was so drenched in urine that even his shirt was soaked. Father awoke and immediately began cleaning up the food that was strewn around the room. The caseworker redirected him to first tend to the hygiene needs of A.S. When the caseworker

questioned Father about a liquor bottle she saw in the home, Father admitted that he had been drinking.

{¶15} Neither parent argues that Father had sufficiently remedied his parenting problems or that he was able to provide A.S. with a suitable permanent home at the time of the hearing. Instead, Father supported Mother's motion for legal custody because he was unable to meet even his own daily needs without assistance. His financial needs were covered by benefits he received from the United States Department of Veterans Affairs ("VA"), but the check was made payable to a designated payee because he was unable to handle his own finances. Father had limited cognitive ability, could not communicate well, and required assistance with daily tasks such as running errands or paying his bills. Father also suffered from mental health and substance abuse problems, which he failed to resolve during this case. Father also failed to maintain regular contract with the caseworker or the court, did not visit A.S. regularly, and did not attend any of the child's medical or therapy appointments.

{¶16} Both parents argue that Mother had sufficiently remedied her parenting problems and was prepared to provide A.S. with a suitable home at the time of the hearing. Although Mother alternatively argues that the trial court should have granted an extension of temporary custody, none of the parties had requested that the trial court extend temporary custody. Both parents explicitly supported mother's motion for full legal custody.

{¶17} Mother testified that she knew how to care for A.S. and had been meeting his needs before he was removed from her home, but LCCS presented substantial evidence to the contrary. The trial court had no expert testimony before it about the specific medical or psychological diagnoses of A.S. or either parent. Although Father argues through his first assignment of error that the trial allowed improper lay opinion testimony on this issue, he is

mistaken. In fact, the trial court sustained his repeated objections to lay witnesses testifying about any of the parties' specific medical, developmental, or psychological problems because they were not qualified to make those diagnoses.

{¶18} Nevertheless, the trial court did admit the testimony of the caseworker and other lay witnesses about their personal observations of A.S.'s significant developmental delays, his medical and dental problems, and the behavior of the parents that affected their ability to meet A.S.'s needs. The witnesses testified about A.S.'s physical and developmental limitations that were apparent to them as lay people, the extensive and ongoing treatment that he received after he was removed from the home, the significant positive changes in the child's behaviors that they observed during this case after his placement in a foster home, and the lack of any involvement of the parents in those changes. Based on her own observations, the caseworker testified that she and LCCS remained concerned that Mother would not be able to meet the basic and special needs of A.S. Taken in context, the caseworker did not purport to render an opinion that "relate[d] to matters beyond the knowledge or experience possessed by lay persons" that would require expert testimony under Evid.R. 702(B). Rather, given the record in this case, it was permissible for the caseworker as a lay witness to testify about what she personally observed and to offer "opinions or inferences" that were "rationally based on [her] perception" and "helpful to * * * determination of a fact in issue." Evid.R. 701. Moreover, the majority of the testimony admitted about the special needs of A.S. was based on firsthand perception and "more in the nature of a description by example than the expression of a conclusion." *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, ¶ 74, citing *State v. Jells*, 53 Ohio St.3d 22, 29 (1990).

{¶19} At the time A.S. came into LCCS custody, he was not toilet trained, he had difficulty walking, most of his teeth were decayed and required extensive dental treatment, and

his speech was significantly delayed. Although Mother had enrolled A.S. in school and made some medical and therapy appointments, A.S. did not attend all of those appointments and did not regularly attend school or receive regular intervention services to address his special needs.

{¶20} After his removal from the home, A.S. began receiving regular medical and dental care and began attending occupational and physical therapy sessions several times a week. Addressing A.S.'s special medical, dental, and developmental needs was a primary component of the case plan, which the parents were required to address to be reunified with him. Despite being encouraged to attend A.S.'s medical and therapy appointments, however, Mother and Father failed to attend any of the appointments during the 12 months before the permanent custody hearing. Mother did not enroll in parenting classes until shortly before the permanent custody hearing. At the time of the hearing, she had completed only a few classes. Consequently, LCCS remained concerned throughout this case that Mother and Father did not acquire any of the knowledge or skills that they would need to meet the special needs of A.S.

{¶21} Mother admitted that she did not attend any of the medical and therapy appointments, despite being encouraged to do so. Several witnesses testified that, through regular therapy and treatment, A.S. had made significant developmental changes over the course of the year, including that he was toilet trained and his speech and mobility had improved significantly. The foster mother testified about the physical and occupational therapy appointments that A.S. attended several times a week as well as the exercises that she performed with him at home for approximately two hours every day to improve his strength, coordination, and mobility.

{¶22} At the hearing, Mother attempted to explain her lack of attendance at the medical and therapy appointments by pointing to the fact that the providers were located in Westlake,

several miles from her home in Lorain, and she did not have a vehicle. Mother admitted, however, that she was the one who had made the original appointments at the Westlake location. The caseworker further testified that Mother never told her that she had a transportation problem until shortly before the permanent custody hearing, after the caseworker asked Mother why she had not attended any of the appointments. Moreover, several witnesses testified that Mother was able to arrange transportation to and from her own appointments and regular Alcoholics Anonymous ("AA") meetings, which were located in four different cities. Mother admitted that she had been able to arrange transportation through her friends and acquaintances at AA and stated that it would be no problem for her to move furniture for A.S. from the home of Father's adult daughter, who lived in Sandusky, approximately twice as far away from Mother's home as Westlake.

{¶23} Mother also failed to make substantial progress on other primary goals of the case plan: addressing her substance abuse and mental health problems and demonstrating an ability to financially provide for A.S. Although she had been in and out of numerous drug treatment programs during the past ten years, she was never able to maintain long-term sobriety from her "drug of choice[,]" cocaine. Mother failed to regularly submit to drug testing, as ordered by the court, and many of the samples that she did submit tested positive for drugs. During this case, Mother entered several different programs, but did not complete an approved residential drug treatment and aftercare program. She repeatedly dropped out of treatment or aftercare programs because she "didn't want to follow the rules" and would typically begin using drugs again.

{¶24} The first witness to testify at the hearing, S.W., had known Mother through the AA program for several years. She testified that Mother informed her that she had suffered several drug relapses since October 2012, her purported sobriety date, but had not disclosed the

relapses to her caseworker, her AA sponsor, or any of her treatment providers. S.W., a recovering addict herself, sent a letter to the caseworker to report Mother's relapses. She explained that it was fundamental that Mother be honest with herself and others before she can achieve and maintain sobriety.

**{¶25}** Apparently after the caseworker confronted Mother about S.W.'s letter, Mother admitted that she had not been honest about her abstinence from drugs and stated that her actual sobriety date was May 2013, right about the time that S.W. sent the letter. During her multiple drug relapses throughout this reopened case, Mother became involved in criminal activity that led to two periods of incarceration, stemming first from a theft conviction and later for violating the terms of her probation by testing positive for drugs. At the time of the hearing, although Mother then purported to have been sober for approximately four months, she had not completed a drug treatment and aftercare program that sufficiently addressed her longtime addiction to cocaine.

**{¶26}** Mother also failed to complete the mental health component of the case plan. Although she admitted that she had mental health problems and had been taking a prescribed psychiatric medication, she did not obtain a mental health assessment until after LCCS filed the permanent custody motion. She had not started any follow-up treatment with a counselor or psychiatrist.

**{¶27}** Finally, Mother was required to demonstrate that she had a source of income that she could budget to financially provide for the basic needs of A.S. Mother had no independent source of income but was dependent upon Father's VA benefits for support. Father's VA benefits were sufficient to provide for the family's basic needs, provided that the funds were properly managed. Although Mother had managed Father's VA benefits for the family, she was

removed as the payee during March 2013 because she had used the funds to buy drugs and for other personal reasons without first paying for the family's food, rent, and utilities. She admitted that she was removed and Father's adult daughter was designated the payee because her "life was unmanageable" and she had not been "accountable" or "responsible" with the VA benefits.

{¶28} Without explanation, Mother further testified that she does not qualify for food stamps because she owes the department of job and family services $8,000 for "extra money for food stamps." Mother had also been unable to open a cable television account in her own name because of an outstanding balance with the provider. During this case, Mother did not obtain employment or take any other steps to improve her ability to financially provide for her son's needs on a consistent basis. At the time of the hearing, Father's adult daughter continued to manage Father's VA benefits, and Mother's outstanding debts to the cable company and the department of job and family services had not been resolved.

{¶29} The evidence before the trial court overwhelmingly demonstrated that the parents had failed to substantially remedy any of the problems that led to A.S.'s removal from their home. Consequently, the trial court did not err in finding LCCS had established the first prong of the permanent custody test under R.C. 2151.414(E)(1).

{¶30} Mother and Father also challenge the trial court's finding that permanent custody to LCCS was in the best interest of A.S. When determining whether a grant of permanent custody is in a child's best interest, the juvenile court must consider all the relevant factors, including those enumerated in R.C. 2151.414(D): the interaction and interrelationships of the child, the wishes of the child, the custodial history of the child, and the child's need for permanence in his life. *See In re R.G.*, 9th Dist. Summit Nos. 24834 AND 24850, 2009-Ohio-6284, ¶ 11. "Although the trial court is not precluded from considering other relevant factors,

the statute explicitly requires the court to consider all of the enumerated factors." *In re Smith*, 9th Dist. Summit No. 20711, 2002 WL 5178, *3 (Jan. 2, 2002); *see also In re Palladino*, 11th Dist. Geauga No. 2002-G-2445, 2002-Ohio-5606, ¶ 24.

{¶31} Although Mother visited A.S. on a consistent basis during this case, her interaction with him never progressed beyond supervised visitation because she did not comply with any of the primary goals of the case plan. Father attended only about 25 percent of the scheduled visits and did not engage in play with A.S. when he did attend. For a period of approximately five months, Father did not attend any of the scheduled visits with A.S. As explained already, neither parent attended any of the medical and therapy appointments and lacked any training about how to address the special needs of the child. With his foster family, on the other hand, the basic and special needs of A.S. were being met, and he was receiving consistent love, care, and encouragement in that home.

{¶32} The guardian ad litem testified that, although A.S. was seven years old at the time of the hearing, she had not asked him about his wishes because he had significant cognitive delays. She testified that, in her opinion, permanent custody was in his best interest.

{¶33} A.S. had spent most of his life in the custody of his parents who did not adequately provide for his basic or special needs. During the 12 months that he lived outside their home, however, A.S. had resided in a stable home, where his special medical, dental, and development needs were consistently addressed. He had made significant improvements while living in the foster home and had assimilated into that family.

{¶34} The trial court had clear and convincing evidence before it to support its conclusion that A.S. was in need of a legally secure permanent placement and that such a placement would only be achieved by terminating parental rights and placing him in the

permanent custody of LCCS. LCCS presented undisputed evidence that A.S had spent his entire seven-year life living in and out of his parents' custody while he waited for them to achieve sobriety and develop the skills and stability required to meet his basic and special needs on a daily basis. Because his parents had failed to remedy their problems, they could not provide a suitable home for A.S. LCCS had explored numerous relatives as potential caregivers for A.S., but none of them was able or willing to provide A.S. with a permanent home. Specifically, the maternal cousin who had legal custody of A.S.'s older sibling did not believe that she would be able to meet all of his special needs.

{¶35} Therefore, given the evidence before the trial court, Mother and Father have failed to demonstrate that the trial court erred in finding that permanent custody was in the best interest of A.S. Mother's first and Father's first, second, and fourth assignments of error are overruled.

FATHER'S ASSIGNMENT OF ERROR III

THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING FATHER'S MOTION FOR [A] CONTINUANCE OF THE TRIAL.

{¶36} Father's third assignment of error is that the trial court erred in denying his motion to continue the permanent custody hearing. The decision to grant or deny a continuance lies within the sound discretion of the trial judge, which requires a balancing of "any potential prejudice to a [party against] concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice." *State v. Unger*, 67 Ohio St.2d 65, 67 (1981). Pursuant to Juv.R. 23, "[c]ontinuances shall be granted only when imperative to secure fair treatment for the parties." Loc.R. 21(A)(1) of the Court of Common Pleas of Lorain County, Juvenile Division, requires that "[r]equests for continuance of any trial before the Judge shall be filed no later than thirty (30) days prior to trial[,]" but "[t]his requirement may be waived by the Court for good cause shown."

{¶37} Father was served with the permanent custody motion in early July 2013 and, by the end of July, the trial court had scheduled the hearing to commence on October 7. Over the next two months, counsel for LCCS and counsel for Mother issued subpoenas to witnesses and for documentary evidence to be presented at the October 7 hearing.

{¶38} Although Father had not requested counsel throughout the pre-hearing proceedings, he filed a motion for court-appointed counsel less than two weeks before the permanent custody hearing was scheduled to commence. The trial court apparently contacted the attorney who was appointed as Father's trial counsel that same day and filed the order appointing her a few days later. The following day, less than one week before the hearing was scheduled to commence, Father's counsel filed a motion for a continuance, requesting more time to become familiar with the facts of the case.

{¶39} The trial court denied the written motion, explaining that trial counsel had been informed about the hearing date at the time she agreed to accept the appointment by the court. Given that Father was aware of the impending proceedings but waited until shortly before the hearing to request court-appointed counsel and counsel was aware of the impending hearing date when she accepted the appointment, under the circumstances of this case, we cannot say that the trial court acted unreasonably or arbitrarily when it denied Father's request for a continuance. Moreover, Father has failed to argue or demonstrate any prejudice to his defense by the trial court's denial of the continuance. Father's third assignment of error is overruled.

MOTHER'S ASSIGNMENT OF ERROR II

MOTHER'S TRIAL COUNSEL WAS INEFFECTIVE IN ASSISTING HER IN THIS MATTER.

{¶40} Mother's remaining assignment of error is that she was denied the effective assistance of trial counsel because counsel failed to "subpoena several witnesses" who "would

have testified about Mother's ability to meet the case plan goals, as she was successful in prior matters with LCCS in meeting her case plan goals."

**{¶41}** To establish a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). A "deficient performance" is one that fell below an objective standard of reasonableness. *Id*. at 687-88. To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id*. at 694. Moreover, trial counsel's decision whether to call a witness generally "falls within the rubric of trial strategy and will not be second-guessed by a reviewing court." *State v. Treesh*, 90 Ohio St.3d 460, 490 (2001).

**{¶42}** As explained above, the trial court's permanent custody decision focused in part on Mother's ability, at the time of the hearing, to provide her son with a suitable home under circumstances of sustained sobriety and stable mental health. Even assuming counsel was deficient in failing to call LCCS witnesses to testify about Mother's past ability to reach her prior case plan objectives, Mother has not established prejudice. Mother's ability to successfully work a case plan five or six years earlier, although relevant to the background of this case, did not establish that she had the current ability to provide A.S. with a suitable permanent home. Given the evidence in the record before us, Mother has not explained how such testimony would have affected the outcome of the case. Mother's second assignment of error is overruled.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

 

 

EVE V. BELFANCE
FOR THE COURT

 

HENSAL, J.
WHITMORE, J.
CONCUR.

APPEARANCES:

KATHLEEN M. AMERKHANIAN, Attorney at Law, for Appellant.

THOMAS MCGUIRE, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and ERIN MYERS, Assistant Prosecuting Attorney, for Appellee.