[Cite as *In re N.G.*, 2016-Ohio-168.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

IN RE: N.G.

C.A. No.     15CA010812


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.     14JC41293

DECISION AND JOURNAL ENTRY

Dated: January 19, 2015

HENSAL, Judge.

{¶1}    Appellant, Haley G. ("Mother"), appeals from a judgment of the Lorain County Court of Common Pleas, Juvenile Division, that terminated her parental rights to her minor child and placed her in the permanent custody of Lorain County Children Services ("LCCS"). This Court affirms.

I.

{¶2}    Mother is the biological mother of four minor children. During the trial court proceedings, two of Mother's children were placed with paternal relatives and Mother voluntarily relinquished her parental rights to her youngest child shortly after the child's birth. The only child at issue in this appeal is N.G., born April 25, 2011. N.G.'s father did not appeal from the trial court's judgment.

{¶3}    On February 4, 2014, LCCS filed a complaint, alleging that N.G. was a neglected and dependent child because Mother was exposing her to drug abuse and domestic violence in

the home. N.G. was later adjudicated a neglected and dependent child. The trial court's initial dispositional order allowed N.G. to remain in Mother's home under an order of protective supervision by LCCS.

{¶4} During the next two months, however, Mother did not comply with the case plan requirements that she engage in regular mental health and drug treatment. Furthermore, she repeatedly tested positive for illegal drugs, including cocaine and heroin. LCCS also became concerned about the condition of Mother's home and her increasingly erratic behavior. Consequently, N.G. was removed from Mother's home and later placed in the temporary custody of LCCS.

{¶5} Effective October 10, 2014, the juvenile court transferred this case to the docket of the drug court in the domestic relations division. *See* R.C. 2301.03(C)(1)(a), which defines the jurisdiction of the Lorain County Domestic Relations Court to include the powers of the juvenile court pertaining to matters under Revised Code Chapter 2151. The juvenile court also amended the case plan to require Mother to "comply with all [drug court] program components and any required treatment recommendations[.]"

{¶6} The drug court program required Mother to participate in ongoing drug and mental health treatment, random drug screening, and weekly status review hearings. After several weeks, however, Mother was admonished by the drug court for missing a treatment appointment, walking out of treatment without permission, and for "not fully engaging in treatment." The drug court allowed Mother to continue in the program for another two months, but the level of her involvement did not improve. On January 14, 2015, the drug court terminated Mother's participation in the program because she had failed to comply with its

requirements, including the mental health component. Consequently, the case was transferred back to the juvenile court.

{¶7} Although not noted in the January 14 journal entry terminating Mother from the drug court program, evidence later taken on the record would reveal that the Mother's mental health had seriously declined. Mother was admitted to a hospital psychiatric ward because she was delusional and exhibiting manic behavioral symptoms. After a two-week stay in the psychiatric ward, Mother was released, but was readmitted one day later because her behaviors and mental health had not stabilized.

{¶8} On February 9, 2015, Mother's trial counsel moved the juvenile court to appoint a guardian ad litem for Mother because counsel questioned whether Mother was competent to represent her own best interests in this case. The trial court later appointed a guardian ad litem to represent Mother throughout the remainder of the proceedings. Mother continued to receive mental health treatment in the hospital psychiatric ward followed by treatment at an outpatient mental health facility.

{¶9} During February and March 2015, although Mother was enrolled in another drug treatment program, she continued to test positive for illegal drugs. On March 23, 2015, LCCS moved for permanent custody of N.G., alleging that N.G. could not or should not be returned to the custody of either parent and that permanent custody was in her best interest. Mother alternatively moved for an extension of temporary custody. Following a hearing on the motions, the trial court terminated Mother's parental rights and placed N.G. in the permanent custody of LCCS. Mother appeals and raises two assignments of error.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN TERMINATING APPELLANT'S PARENTAL RIGHTS BY GRANTING PERMANENT CUSTODY OF N.G. TO [LCCS] WHEN THE TRIAL COURT'S JUDGMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶10} Mother's first assignment of error is that the trial court's judgment was not supported by the evidence. Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under Revised Code Section 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under Section 2151.414(D). *See* former R.C. 2151.414(B)(1)[1] and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶11} The trial court found that the first prong of the permanent custody test had been satisfied because N.G. could not be returned to Mother within a reasonable time or should not be returned to her because Mother had failed to substantially remedy the conditions that caused the child to be placed outside the home. *See* R.C. 2151.414(E)(1).[2] There was overwhelming evidence before the trial court to support that finding.

---

[1] Section 2151.414(B)(1) was amended effective September 17, 2014.
[2] Although the trial court made an alternate finding that Section 2151.414(E)(4) was satisfied because Mother had demonstrated a lack of commitment to N.G., this Court confines its review to the trial court's finding under Section 2151.414(E)(1).

{¶12} Mother did not have stable housing or income and had not yet addressed her problems with domestic violence. More significantly, Mother had just begun to address her more serious mental health and drug abuse problems.

{¶13} At the time of the hearing, Mother had been receiving mental health treatment for only a few months and had not voluntarily sought treatment. Instead, her inpatient psychiatric treatment was the result two involuntary psychiatric holds and her outpatient treatment had been ordered by the probate court. One of Mother's counselors testified that Mother could not maintain stable mental health unless she managed her psychiatric medications on a regular basis. Mother had yet to demonstrate that she had the ability to do so.

{¶14} Although Mother started several drug treatment programs during this case, she did not complete any of them. Her primary treatment had been limited to the prescribed use of the step-down drug Suboxone, which suppressed her opioid cravings, but is intended to be used in conjunction with regular counseling, which Mother was not receiving. Moreover, to achieve ongoing sobriety, Mother would need to demonstrate substance-free sobriety for four to six months, followed by a sober support program. Although Mother was attending sober support group meetings, she had never engaged in regular drug counseling, nor had she reached a point at which she could discontinue Suboxone.

{¶15} On appeal, Mother does not dispute that she had failed to substantially remedy the conditions that had caused N.G.'s ongoing removal from her home. Instead, Mother challenges the trial court's finding under Revised Code Section 2151.414(E)(1) that, "notwithstanding reasonable case planning and diligent efforts by the agency," she had failed to substantially remedy the conditions that caused N.G. to be placed outside the home. She argues that the trial court erred in finding that she failed to substantially remedy her problems because LCCS failed

to make reasonable efforts under the case plan to reunify her with N.G. Specifically, Mother asserts that she was not given enough time to remedy her drug and mental health problems.

{¶16} Although Mother correctly asserts that LCCS moved for permanent custody less than eight months after N.G. was placed in the temporary custody of LCCS, the trial court adopted the original case plan several months earlier in its initial dispositional order that allowed N.G. to remain in Mother's home under an order of protective supervision. Mother ultimately had almost one year to work on the case plan and, during that time, LCCS had connected her with all the service providers that she needed to comply with the reunification goals of the case plan.

{¶17} In addition to the obligation of LCCS to make reasonable efforts to provide Mother with appropriate reunification services, Mother must be held accountable for failing to participate in the services provided. Section 2151.414(E)(1) explicitly requires the trial court "[i]n determining whether the parents have substantially remedied those conditions" to "consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties."

{¶18} The record includes substantial and undisputed evidence that Mother's inability to stabilize her mental health, maintain sobriety, or obtain steady employment and housing resulted from her own failure to consistently work on the goals of the case plan, not because LCCS failed to assist her in doing so. Consequently, Mother has failed to demonstrate that the trial court's finding under Revised Code Section 2151.414(E)(1) was against the weight of the evidence.

{¶19} Mother also argues that the evidence failed to support the trial court's finding that permanent custody was in N.G.'s best interest. When determining the child's best interests

under Section 2151.414(D), the juvenile court must consider all the relevant enumerated factors: the interaction and interrelationships of the child, her wishes, the custodial history of the child, and the child's need for permanence in her life. *See In re R.G.,* 9th Dist. Summit Nos. 24834, 24850, 2009-Ohio-6284, ¶ 11.

{¶20} Mother's interaction with N.G. during this case was limited to weekly, supervised visits, which Mother did not attend on a regular basis. Witnesses testified that, when Mother did visit, her interaction with N.G. was usually appropriate, but they remained concerned about Mother's ability to care for the child outside of a supervised setting given her unstable mental health and drug problems.

{¶21} N.G. had developed a bond with the foster parents and had assimilated into their home. When N.G. was still living in Mother's home, she exhibited aggressive behavior and Mother was unable to control her. N.G.'s behavior had improved while living in a stable environment with appropriate boundaries and consequences for her misbehavior. The foster parents were not interested in adopting N.G. but had expressed a willingness to continue providing her with a secure environment until she found a permanent home.

{¶22} Because N.G. was only four years old at the time of the hearing, the guardian ad litem spoke on her behalf. The guardian opined that permanent custody was in N.G.'s best interest because Mother had serious mental health and drug problems and had demonstrated little improvement over the past year.

{¶23} N.G. had spent over one year of her short life outside Mother's custody. "This Court has repeatedly stressed, however, that 'the time period in and of itself cannot be held against the parent without considering the reasons for it and the implications that it had on this child.'" *In re I.A.*, 9th Dist. Summit No. 26642, 2013-Ohio-360, ¶ 20, quoting *In re C.M.,* 9th

Dist. No. 21372, 2003-Ohio-5040, ¶ 16 and *In re Smith,* 9th Dist. No. 20711, 2002 WL 5178, *5 (Jan. 2, 2002). In this case, N.G. remained in agency custody because Mother could not provide her with a suitable home and had failed to consistently work on resolving her substance abuse and mental health problems. During that same period, however, N.G. had made substantial progress addressing her emotional issues and had developed a stable and structured life in the home of the foster parents. Because N.G. was in need of a legally secure permanent placement and LCCS had been unable to find any relatives who were willing and able to provide her with a stable home, the trial court reasonably concluded that a permanent placement would only be achieved by granting LCCS permanent custody. Consequently, there was substantial evidence before the trial court to support its finding that permanent custody was in the best interest of N.G. Mother's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN TERMINATING APPELLANT'S PARENTAL RIGHTS BY GRANTING PERMANENT CUSTODY OF N.G. TO [LCCS] WHEN THE AGENCY FAILED TO GIVE ADEQUATE NOTICE OF THE GROUNDS AGAINST WHICH MOTHER MUST DEFEND.

{¶24} Mother's second assignment of error is that she was deprived of due process at the permanent custody hearing because the agency's motion failed to give her adequate notice of the grounds for permanent custody. Specifically, although the motion alleged that N.G. could not or should not be returned to Mother's home, *see* Section 2151.414(E), it failed to set forth the specific subsection(s) of Section 2151.414(E) upon which its allegations were based.

{¶25} Mother was represented at the hearing by counsel and a guardian ad litem, who is also an attorney, but neither of them raised this issue before or during the permanent custody hearing. Instead, Mother's counsel and guardian ad litem proceeded through the hearing and

fully defended Mother against the agency's motion for permanent custody. Consequently, Mother has forfeited all but plain error. *See, e.g., In re G.M.*, 9th Dist. Wayne Nos. 14AP0040, 14AP0041, 2015-Ohio-582, ¶ 26. Because Mother has not argued plain error, "this Court will not construct a claim of plain error on behalf of an appellant who fails to raise such an argument in her brief." *Id*. at ¶ 27, quoting *State v. White,* 9th Dist. Summit Nos. 23955, 23959, 2008-Ohio-2432, ¶ 33. Mother's second assignment of error is overruled.

III.

**{¶26}** Mother's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

MOORE, P.J.
SCHAFER, J.
CONCUR.

APPEARANCES:

ROBERT CABRERA, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and CARA FINNEGAN, Assistant Prosecuting Attorney, for Appellee.