[Cite as *In re J.W.*, 2018-Ohio-3897.]

STATE OF OHIO           )                IN THE COURT OF APPEALS
                          )ss:            NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT     )

IN RE: J.W.                        C.A. Nos.     28966
      M.H.                                       28976
      D.H.
      F.V.

                                          APPEAL FROM JUDGMENT
                                        ENTERED IN THE
                                        COURT OF COMMON PLEAS
                                        COUNTY OF SUMMIT, OHIO
                                        CASE Nos.    DN 16 08 0635
                                                    DN 16 08 0636
                                                   DN 16 08 0637
                                                    DN 16 08 0638

DECISION AND JOURNAL ENTRY

Dated: September 26, 2018

CALLAHAN, Judge.

{¶1}    Appellants Mother and Father H. ("Father") separately appeal the judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated their parental rights and awarded permanent custody of the subject children to Summit County Children Services Board ("CSB" or "the agency"). This Court dismisses Mother's appeal and affirms the dispositional order.

I.

{¶2}    Mother is the biological mother of J.W. (d.o.b. 2/22/10), M.H. (d.o.b. 7/26/13), D.H. (d.o.b. 7/26/13), and F.V. (d.o.b. 5/4/15). Father is the biological father of F.V. Father S., the biological father of J.W.; and Father K., the biological father of M.H. and D.H., did not participate in the cases below and are not parties to this appeal.

{¶3} In August 2016, the Akron Police Department investigated a report that the children were being locked in a room in an unsanitary and unsafe home where Mother resided with her then-husband.[1] Based on the filthy conditions and lack of food in the home, as well as the captivity of the children, the police removed J.W., M.H., D.H., and F.V. from the home and placed them in the protective custody of CSB. The agency filed complaints alleging that all four children were abused (endangered), neglected, and dependent. At the adjudicatory hearing, CSB withdrew its allegations of abuse, and the juvenile court found each child to be neglected and dependent. The children were placed in the temporary custody of the agency after the dispositional hearing, and the juvenile court adopted the case plan as the order of the court. The court later maintained the children in the temporary custody of CSB after a review hearing.

{¶4} In June 2017, CSB filed a motion for permanent custody in which it alleged that the children could not or should not be returned to Mother within a reasonable time based on her failure to remedy the conditions which gave rise to the children's removal. The agency alleged that all the fathers had abandoned their children. Moreover, it alleged that an award of permanent custody was in the children's best interest. In November 2017, Father filed a motion for a first six-month extension of temporary custody, while Mother orally moved for a first six-month extension at the final dispositional hearing. At the conclusion of the two-day permanent custody hearing, the juvenile court denied the parents' motions for a six-month extension of temporary custody, granted CSB's motion for permanent custody, and terminated all parental rights as to each of the four children. Mother and Father filed separate timely notices of appeal. Mother failed to file an appellate brief, while Father raises two assignments of error for review.

---

[1] Mother's then-husband is not the biological father of any of the children at issue in this case.

II.

<u>Appeal No. 29876</u>

Although Mother timely filed a notice of appeal from the juvenile court's judgment awarding permanent custody of J.W., M.H., D.H., and F.V. to CSB, she has failed to file a merit brief or assert any assignments of error. As Mother has effectively abandoned her appeal, Appeal No. 28976 is dismissed. *See In re M.O.*, 9th Dist. Summit Nos. 28351, 28371, 28383, 2017-Ohio-7691, ¶ 21.

Appeal No. 28976 dismissed.

<u>Appeal No. 28966</u>

FATHER'S ASSIGNMENT OF ERROR I

THE TRIAL COURT'S FINDING THAT PERMANENT CUSTODY WAS IN THE BEST INTEREST OF [F.V.] IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AS THE AGENCY FAILED TO MAKE REASONABLE EFFORTS TO REUNIFY FATHER WITH HIS CHILD[.]

{¶5} Father argues that the juvenile court erred by granting permanent custody of F.V., because CSB failed to use reasonable efforts to facilitate his reunification with the child. This Court disagrees.

{¶6} R.C. 2151.419 addresses when the juvenile court must determine whether CSB has made reasonable efforts towards reunification of a child with her parents. It is now well settled that the statute imposes no requirement for such a determination "'at the time of the permanent custody hearing unless the agency has not established that reasonable efforts have been made prior to that hearing.'" *In re A.C.-B.*, 9th Dist. Summit Nos. 28330 and 28349, 2017-Ohio-374, ¶ 22, citing *In re H.H.*, 9th Dist. Summit No. 25463, 2010-Ohio-5992, ¶ 12, quoting *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 41-43.

**{¶7}** In this case, at the shelter care hearing, the magistrate found that exigent circumstances prevented CSB from using reasonable efforts to prevent the removal of the children from their home, because the police removed the children pursuant to Juv.R. 6. However, the magistrate found at the adjudicatory hearing, the initial dispositional hearing, and a subsequent review hearing that CSB had used reasonable efforts to prevent the continued removal of the children from their home. In addition, the magistrate granted the agency's motion for a judicial determination of reasonable efforts to finalize a permanency plan when it filed its motion for permanent custody. Despite Father having been properly served with notice of the proceedings, and verification that he is the biological father of F.V., Father failed to challenge the reasonable efforts findings either by timely objection or motion to set aside. As a result, he has forfeited the issue on appeal except for a claim of plain error. *See In re S.D.*, 9th Dist. Lorain Nos. 15CA010864 and 15CA010867, 2016-Ohio-1493, ¶ 25; citing *In re B.C.*, 9th Dist. Summit Nos. 26976 and 26977, 2014-Ohio-2748, ¶ 24; Juv.R. 40(D)(3)(b)(iv). Father has not alleged plain error, and this Court declines to construct an argument on his behalf. *See In re N.C.*, 9th Dist. Summit Nos. 27116 and 27118, 2015-Ohio-1627, ¶ 62, citing Juv.R. 40(D)(3)(b)(iv), App.R. 12(A)(2), and App.R. 16(A)(7). Moreover, in the absence of transcripts of the hearings at which the juvenile court made its reasonable efforts determinations, this Court must presume regularity in relation to those determinations. *See In re S.D.* at ¶ 25, citing *In re T.K.*, 9th Dist. Summit No. 24006, 2008-Ohio-1687, ¶ 22.

**{¶8}** Nevertheless, the record includes substantial evidence supporting the juvenile court's finding that CSB used reasonable efforts to prevent the continued removal of F.V. from her parents' custody. The first protective caseworker testified that, as Father was living in Illinois, he requested that Father establish paternity and execute releases so that the caseworker

could coordinate with service providers out of state to determine whether Father could meet the basic needs of the child and parent appropriately. That caseworker testified that he never received releases from Father during the eight months he provided case management services to the parents. In addition, Father never engaged in any services during that time; never contributed any financial support for the child; and, in fact, never expressed any desire for legal custody. Father merely indicated a desire that F.V., whom he had never met or visited, know him.

{¶9} The second caseworker assigned to the case testified that she spoke to or sent letters to Father every month to discuss specific actions to allow her to assess Father's ability to meet F.V.'s basic needs. By the time she began managing the case, Father was expressing a desire for legal custody of the child. As Father was living with his girlfriend and several other people in a home, the caseworker sent background check forms for each person living in the home. She only received completed forms from Father and his girlfriend, so she was unable to assess whether or not the other adults in the home were appropriate. The caseworker requested that Father engage in a drug and alcohol assessment, urine screens, and a mental health assessment, because she knew nothing about him. She attempted to contact a counselor Father was seeing, but the counselor did not return her calls. The caseworker contacted a parenting class provider in Illinois, but that provider reported that there were no appropriate parenting classes available for Father, who required developmental parenting classes. The caseworker testified that she made a referral for Father for appropriate parenting classes in Illinois, but the provider would not call either her or Father back. She acknowledged Father's and her own frustration with service providers in Illinois.

{¶10} Father did not explain to the caseworker why he would not leave Illinois to facilitate his desire to parent F.V. The caseworker knew Father was on probation for criminal

offenses (burglary and escape) in Illinois, but she did not know if the terms of his probation prevented him from leaving the state. Father never informed her that he was unable to leave Illinois. Nevertheless, he never sought to visit with the child, although he asked about F.V. whenever he called the caseworker.

{¶11} Approximately three weeks before the second day of the permanent custody hearing, Father moved to Ohio to try to establish a relationship with F.V. He signed releases twelve days before the hearing. The caseworker made a referral to Portage Path for assessments, but Father failed to appear for his appointment. The caseworker made a referral for parenting classes. Father attended only one session. CSB scheduled visitations for Father and F.V. He attended his first visit, but he cancelled his second because it was "too cold" and "snowy out." He also claimed to have had a blister after twisting his ankle when slipping in the snow.

{¶12} When evaluating whether the agency has made reasonable efforts, this Court considers the following:

> In determining whether reasonable efforts were made, the child's health and safety shall be paramount. [R.C. 2151.419(A)(1)]. Although [R.C.] Chapter 2151 does not define reasonable efforts, courts construe the term to mean [t]he state's efforts to resolve the threat to the child before removing the child or to permit the child to return home after the threat is removed[.] *In re T.B.-W.*, 9th Dist. Summit No. 27544, 2015-Ohio-992, ¶ 15, quoting *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, at ¶ 28, quoting Will L. Crossley, *Defining Reasonable Efforts: Demystifying the State's Burden Under Federal Child Protection Legislation*, 12 B.U.Pub.Int.L.J. 259, 260 (2003). In a reasonable efforts determination, the issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute. *In re C.M.*, 9th Dist. Summit No. 24380, 2009-Ohio-943, ¶ 21, citing *In re Myers*, 4th Dist. Athens No. 02CA50, 2003-Ohio-2776, ¶ 18.

(Internal quotations omitted.) *In re K.C.*, 9th Dist. Lorain No. 17CA011135, 2017-Ohio-8779, ¶ 24.

{¶13} A review of the record indicates that both CSB caseworkers provided case management services to Father and kept in regular contact with him. Despite the lack of responsiveness on the part of service providers in Illinois, the second caseworker continued to try to facilitate services for Father there. While Father's frustration was understandable, his failure to comply with objectives within his control was not. He offered no excuse for failing to send releases to the first caseworker or ensuring that all members in his household provided information for background checks. Moreover, Father offered no reason why he could not have moved to Summit County, where he could have obtained the necessary services, earlier than three weeks before the second day of the permanent custody hearing. Furthermore, the caseworker facilitated services and visitations for Father immediately upon his relocation to Summit County. Nevertheless, Father failed to take full advantage of those services, failing to appear for appointments and cancelling one of his two opportunities to visit with his child he had never met. This Court has recognized not only the obligation of the agency to use reasonable reunification efforts, but also the obligation of the parent to participate in the services provided. *See In re N.G.*, 9th Dist. Lorain No. 15CA010812, 2016-Ohio-168, ¶ 17. Here, Father must be held accountable for failing to engage in the services and opportunities facilitated by CSB. *See id*. Under the circumstances, the record fails to support Father's argument that the juvenile court's finding that the agency used reasonable efforts to prevent the continued removal of F.V. from her home was against the manifest weight of the evidence.

{¶14} To the extent that Father, citing *In re H.H.*, 9th Dist. Summit No. 25463, 2010-Ohio-5992, ¶ 17, has noted one instance in which this Court considered an argument alleging the

agency's lack of reasonable efforts within the context of the best interest of the child,[2] he has not provided any analysis of the issue. He merely cited the best interest factors in R.C. 2151.414(D) without arguing how CSB's alleged lack of reasonable efforts related to any of the factors. This Court again declines to create an argument on Father's behalf. *See In re N.C.*, 2015-Ohio-1627, at ¶ 62. For the above reasons, Father's first assignment of error is overruled.

FATHER'S ASSIGNMENT OF ERROR II

THE TRIAL COURT ABUSED ITS DISCRETION BY ARBITRARILY DENYING FATHER'S MOTION TO CONTINUE THE PERMANENT CUSTODY TRIAL[.]

{¶15} Father argues that the juvenile court abused its discretion by denying his attorney's motion to continue the first day of the hearing due to Father's absence. This Court disagrees.

{¶16} The denial or granting of a continuance is left to the sound discretion of the trial court, and this Court will not reverse absent an abuse of that discretion. *In re L.A.*, 9th Dist. Summit No. 21531, 2003-Ohio-4790, ¶ 41, citing *State v. Unger*, 67 Ohio St.2d 65, 67 (1981). An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

---

[2] The majority cited no authority for its novel approach. The concurring opinion cited the Ohio Supreme Court's analysis of the issue as enunciated in *In re C.F.* at ¶ 43, and would have concluded that the juvenile court was not required to make a reasonable efforts determination at the permanent custody hearing. *In re H.H.* at ¶ 33 (Carr, J., concurring in judgment only).

**{¶17}** In exercising its discretion, the trial court must balance "'any potential prejudice to a [party against] concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice.'" (Alteration in original.) *In re A.S.*, 9th Dist. Lorain Nos. 14CA010532 and 14CA010534, 2014-Ohio-2458, ¶ 36, quoting *Unger* at 67. The *Unger* court adopted a balancing test, wherein the following factors should be considered:

> the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.

*Id.* at 67-68; *see also In re T.B.*, 9th Dist. Summit No. 27334, 2014-Ohio-4040, ¶ 11. In addition, specific to juvenile law, Juv.R. 23 provides that "[c]ontinuances shall be granted only when imperative to secure fair treatment for the parties."

**{¶18}** In this case, CSB filed its motion for permanent custody on June 13, 2017. Given that he was residing out of state, Father was not served with the motion until August 22, 2017. Nevertheless, he was notified of the November 28, 2017 hearing date by magistrate's decision filed July 25, 2017. Despite several months' advance notice, Father notified his attorney by text message at 11:30 p.m. on the night before the hearing that "his ride's oil pump in the car was faulty and could not get here for [the hearing]." Father's attorney requested a continuance, which the juvenile court denied. Father's attorney was present for the entire first day of hearing, and he cross-examined all witnesses presented by CSB.

**{¶19}** At the conclusion of the agency's case-in-chief, Mother's attorney informed the court that Mother had gone into labor and counsel requested a continuance for that reason. No party objected, and the juvenile court scheduled a second hearing date for two months later. The juvenile court specifically indicated that it was granting the continuance in part to allow Father to

be present. Moreover, the trial court informed Father's attorney that it would allow Father to recall any witness who had testified during the first day of hearing and to present his own case-in-chief.

{¶20} During the second day of the permanent custody hearing, Father was present with his attorney. CSB recalled the protective caseworker, and Father had the opportunity to be present for her testimony and to question her. Father did not ask to recall any other prior witnesses. He testified in support of his motion for a first six-month extension of temporary custody.

{¶21} Father has not explained how he was prejudiced by the denial of his motion for a continuance. He was represented by counsel during the first day of the hearing and given a full and fair opportunity to recall and question any prior witness on the second day. He had been aware of the hearing date for several months, and yet waited until the last minute to try to travel to Ohio in the winter. He did not inform his attorney when he would be able to be present in Ohio, so counsel could not indicate the length of the delay requested. CSB was present and prepared to present the testimony of its seven witnesses. Mother was present and expecting another child, requiring that any continuance be for a substantial enough time to accommodate her delivery and recovery. The juvenile court ultimately granted a continuance of the permanent custody hearing, in part to accommodate Father. Under the circumstances, this Court concludes that the juvenile court's initial denial of Father's motion for a continuance did not constitute an abuse of discretion. Father's second assignment of error is overruled.

Judgment affirmed.

III.

**{¶22}** As to Appeal No. 28966, Father's two assignments of error are overruled.  The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.  As Mother abandoned her appeal, Appeal No. 28976 is dismissed.

Appeal No. 28966 affirmed,<br/>and Appeal No. 28976 dismissed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

LYNNE S. CALLAHAN
FOR THE COURT

CARR, P. J.
CONCURS.

HENSAL, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

ANGELA M. KILLE, Attorney at Law, for Appellant.

ALAN M. MEDVICK, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.